UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------X
JULIO CUELLO,

    Plaintiff,

   -against-

UNITED STATES OF AMERICA,

    Defendant.
---------------------------------------------------X

NOT FOR ELECTRONIC PUBLICATION

**MEMORANDUM & ORDER**

11-CV-2216 (KAM)

**MATSUMOTO, United States District Judge:**

    On May 2, 2011, Julio Cuello ("plaintiff") commenced this *pro se* action against Cameron Lindsay, former Warden of the United States Bureau of Prisons' ("BOP") Metropolitan Detention Center in Brooklyn, New York ("MDC"), an "Assistant Warden (Name Unknown)" of the MDC, Senior Officer Specialist Paul Rammarine of the MDC, and an "Escort Officer (Name Unknown)" of the MDC in their official capacities, alleging personal injuries pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671–2680. (ECF No. 1, Complaint, filed 5/2/2011 ("Compl.").) Because the United States is the only proper defendant in an FTCA action, the United States was substituted as the sole defendant by order dated May 11, 2011. (ECF No. 2, Order, dated 5/11/2011.)

    In the complaint, plaintiff, a federal inmate formerly incarcerated at the MDC, alleges that MDC employees negligently failed to supervise and prevent another MDC inmate from attacking plaintiff on July 25, 2007. (*See generally* Compl.) On August 10, 2012, defendant moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction. (*See* ECF No. 16, Defendant's Memorandum in Support of Motion to Dismiss for Lack of Jurisdiction, filed 8/10/2012 ("Mem.").) Plaintiff opposed defendant's motion on August 30, 2012 (ECF No. 18, Plaintiff's Opposition to Defendant's Motion to

1

Dismiss, filed 8/30/2012 ("Opp.")), and defendant filed a reply in support of its motion on September 28, 2012 (ECF No. 23, Defendant's Reply in Support of Motion to Dismiss, filed 9/28/2012 ("Reply")).

For the reasons that follow, defendant's motion to dismiss the complaint for lack of subject matter jurisdiction is granted and plaintiff's complaint is dismissed, with prejudice.

## BACKGROUND

From July 26, 2006 through November 5, 2008, plaintiff was housed as an inmate at the MDC. (ECF No. 16-1, Declaration of Nicole McFarland, Esq. in Support of Defendant's Motion to Dismiss, filed 8/10/2012 ("McFarland Decl."), ¶ 2.) Plaintiff is currently incarcerated at the Federal Correctional Institution in McKean, Pennsylvania, serving a 216-month sentence for conspiracy to commit robbery, attempted robbery, and conspiracy to distribute and possession with intent to distribute five kilograms or more of cocaine, and an 84-month sentence for the use, carrying, and possession of a firearm in furtherance of a crime of violence.[1] (*Id.*)

**I.      The Complaint[2]**

Plaintiff alleges that while MDC inmates are normally housed in a general population unit of the facility, some are occasionally confined in the Special Housing Unit ("SHU"), a secured area on MDC's ninth floor. (*See* Compl. ¶¶ 11-12, 25, Ex. B at 1-2.) Pursuant to BOP regulations, SHU inmates wear orange clothing to differentiate them from the brown clothing worn at MDC by general population inmates. (*See id.* ¶ 14, Ex. B at 2.) Also pursuant to BOP regulations, whenever SHU inmates are outside their cells, they should be

---

[1] The record is silent as to whether plaintiff's sentences were imposed concurrently or consecutively.
[2] The following allegations are drawn from plaintiff's complaint and attachments thereto, unless otherwise indicated. While the court construes plaintiff's *pro se* allegations to raise the strongest arguments they suggest, *see Burgos v. Hopkins*, the court has not drawn undue inferences in plaintiff's favor because defendant's motion to dismiss is premised on a lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). *See J.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004). Additionally, although the complaint's attachments are designated Exhibits "A" through "I," there are only seven attachments; nonetheless, for simplicity the court refers to the exhibit letters used by plaintiff in his complaint and other court filings throughout the instant Memorandum and Order.

handcuffed, escorted by at least one MDC officer, and separated from the general population. (*See id.* ¶¶ 13, 23-25.)

On July 25, 2007, plaintiff was housed on the seventh floor in Unit J-73 of the general population in MDC. (*Id.* ¶ 15, Ex. B at 1-2.) Also at that time, another MDC inmate known only as "Marrero" was housed in the SHU. (*Id.* ¶ 15, Ex. B at 1-2.) At approximately 7:10 p.m. on July 25, 2007, Marrero -- dressed in brown clothing, unsecured by handcuffs, and unescorted -- entered Unit J-73 and physically attacked plaintiff, allegedly breaking plaintiff's left wrist and left collar bone and injuring plaintiff's upper and lower back. (*Id.* ¶¶ 15-17, Ex. D at 2.) Plaintiff further alleges that, since Marrero's attack, he has suffered mental trauma and psychological side effects from the continuing fear of another attack due to the MDC staff's unwillingness to protect plaintiff. (*Id.* ¶¶ 15-17, Ex. D at 2.)

Plaintiff alleges two explanations of how Marrero was able to access plaintiff's unit at MDC on July 25, 2007. In the first instance, plaintiff suggests that MDC employees failed to properly supervise Marrero pursuant to BOP and SHU guidelines and prevent the attack. (*Id.* ¶¶ 17-19.) Alternatively, plaintiff alleges that MDC employees aided and abetted Marrero's attack on plaintiff by (i) supplying Marrero with brown clothing (when Marrero should have been wearing orange clothing because he was a SHU inmate at the time); (ii) allowing Marrero to roam outside the SHU unescorted and unsecured by handcuffs, in contravention of MDC and SHU policies; (iii) admitting Marrero into Unit J-73; and (iv) otherwise providing Marrero with the "needed accessories" to attack plaintiff. (*Id.* ¶¶ 14-15, 23-25, Ex. B at 1-2, Ex. E at 2.)

After the attack by Marrero on July 25, 2007, plaintiff alleges that the BOP unjustly confined plaintiff in the SHU "for being the victim" of Marrero's attack until

approximately August 14, 2007. (*Id*., Ex. E at 2.) Plaintiff also alleges that during the August 2007 confinement, the BOP denied plaintiff "the legal correspondences to file the complaint (BP-8/BP-9)." (*Id*.) Plaintiff submitted an Inmate Request for Informal Resolution form ("BP-8") to the BOP on approximately August 28, 2007 and another one on September 4, 2007, but the BOP never processed them, claiming they were lost. (*Id*.) Thereafter, according to plaintiff, for three weeks in December 2007, the BOP again confined plaintiff in the SHU, this time without reason or explanation. (*Id.*) Plaintiff submitted another BP-8 on January 10, 2008, but this BP-8 was also never processed. (*Id*., Ex. B. at 2, Ex. E at 2.) In early February 2008, plaintiff finally succeeded in filing a BP-8 with respect to the alleged July 25, 2007 attack. (*Id*., Ex. C at 1-2, Ex. E at 2.)

On or about August 27, 2007, MDC's on-site hospital staff treated plaintiff's broken left wrist and left hand injuries by giving plaintiff a Velcro cast for his left hand. (*Id*. ¶ 16, Ex. H.) On or about August 18, 2008, MDC hospital staff treated plaintiff's "lower back and broken left collar[bone] injuries" resulting from Marrero's attack by assigning plaintiff to a bottom bunk and providing him with a two-piece uniform and a "wrist brace," and indicated that this treatment should continue until mid-February 2009. (*Id*. ¶ 16, Ex. H.[3])

## II. Prior Related Litigation and Procedural History

On July 17, 2009, plaintiff filed an administrative tort claim on a Standard-Form 95, Claim for Damage, Injury, or Death ("SF-95") with the BOP's Northeast Regional Office, as required prior to commencing an FTCA action in federal district court pursuant to 28 U.S.C. §§ 2671, *et seq*. (ECF No. 25, Standard Form 95, dated July 17, 2009 ("SF-95"); Compl. ¶ 26; McFarland Decl. ¶ 21; Mem. at 2.) Plaintiff alleged in the SF-95 that MDC employees

---

[3] The lower portion of Exhibit H to the complaint, a copy of the MDC Medical Report of Duty Status for plaintiff dated August 18, 2008, is actually designated "Exhibit I" by plaintiff.

4

carelessly failed to protect him from Marrero's attack on July 25, 2007. (SF-95 at 2.) Specifically, plaintiff alleged that although MDC employees know that SHU inmates wear orange clothing and are to be handcuffed and escorted when outside their cells, MDC employees supplied Marrero "with a brown uniform . . . , provided him with the necessary accessories to conceal himself, [and] gave him access through two locked doors, an elevator, and two more additional doors" that led to plaintiff's Unit J-73. (*Id.*) The SF-95 sought $1,000,000 for personal injury damages sustained as a result of the alleged attack. (*Id.* at 1.)

On September 28, 2009, before plaintiff's SF-95 was denied by the BOP, plaintiff commenced a *pro se* action in this District, *Cuello v. Lindsay*, No. 09-cv-4525 (the "*Bivens* action"), before the undersigned against the same MDC employees originally named in the instant complaint, alleging that MDC employees violated plaintiff's constitutional rights in connection with the alleged July 25, 2007 attack, pursuant to the Supreme Court's decision in *Bivens v. Six Unknown Named Agents,* 403 U.S. 388 (1971). (*See generally Cuello v. Lindsay*, No. 09-cv-4525, ECF No. 1, Complaint, filed 9/28/2009 ("*Bivens* Compl.").) In the *Bivens* action, plaintiff's *Bivens* complaint was liberally construed by the court to allege that MDC employees "were negligent and deliberately indifferent in failing to prevent [the alleged July 2007] assault . . . and in failing to provide adequate medical care for the injuries sustained during the assault, in violation of the Eighth Amendment." (*Cuello v. Lindsay*, No. 09-cv-4525, ECF No. 35, Memorandum and Order Granting Defendants' Motion to Dismiss and Alternative Motion for Summary Judgment, dated 3/25/2011 (the "*Bivens* Dismissal Order").)

On January 13, 2010, while the *Bivens* action was still pending before the undersigned, the BOP's Regional Office denied plaintiff's SF-95 claim in a memorandum dated January 13, 2010, without any stated reason. (*See* Compl. ¶ 26, Ex. A ("SF-95 Denial Ltr.");

5

Mem. at 2.) The denial letter informed plaintiff that he "may bring an action against the United States" in federal district court within six months, that is, by July 13, 2010. (*See* Compl. ¶ 26; SF-95 Denial Ltr.; Mem. at 2.)

On March 11, 2011, pursuant to the court's order entered March 7, 2011, the United States Attorney certified that two of the defendants in plaintiff's *Bivens* action, Lindsay and Rammarine, were acting within the scope of their employment[4] at the times relevant to the alleged July 2007 attack upon plaintiff. (*See Cuello v. Lindsay*, No. 09-cv-4525, ECF No. 29, Order, dated 3/7/2011, ECF No. 31, Certification, dated 3/11/2011.)

On March 25, 2011, the court issued a Memorandum and Order in the *Bivens* action (the "*Bivens* Dismissal Order"), dismissing plaintiff's *Bivens* claims against the defendants in their official capacities with prejudice, because those claims were barred by the doctrine of sovereign immunity. (*Bivens* Dismissal Order at 14-15.) The court also dismissed the *Bivens* claims against the defendants in their individual capacities, because plaintiff failed to exhaust his administrative remedies for those claims under the Administrative Remedy Program ("ARP") of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). (*Id.* at 16-24.)

The court observed in the *Bivens* Dismissal Order that plaintiff's allegations in the *Bivens* action against defendants Lindsay and Rammarine could liberally be construed as FTCA claims, insofar as plaintiff appeared to allege that these defendants negligently failed to adhere to the BOP's safety regulations regarding segregation of inmates and negligently failed to provide plaintiff with prompt and adequate medical care after the alleged July 2007 attack. (*Bivens*

---

[4] If the United States Attorney General certifies that its employees were acting within the scope of their employment at the time of an alleged incident, any civil action or proceeding arising from that alleged incident against such employees "shall be deemed" an FTCA claim against the United States. *See* 28 U.S.C. § 2679(d)(1); *Rosenblatt v. St. John's Episcopal Hosp.*, No. 11-cv-1106, 2012 WL 294518, at *6 (E.D.N.Y. Jan. 31, 2012). The other two defendants in the *Bivens* action, "Assistant Warden" and "Escort Officer," were never certified, because plaintiff failed to properly serve them with summonses. (*Bivens* Dismissal Order at 2 n.2)

Dismissal Order at 25.)  The court also noted that even if plaintiff's allegations were construed as an FTCA action, any such FTCA action was premature, given that the BOP Regional Office had not yet denied plaintiff's SF-95 claim when he filed the *Bivens* complaint on September 28, 2009.  (*Id.* at 27-28.)  Additionally, the court noted that the Supreme Court and the Second Circuit require exhaustion of an FTCA plaintiff's claim before the initiation of a federal FTCA action, and that plaintiff's six-month limitations period to initiate an FTCA action after the BOP's denial of his SF-95 claim appeared to have expired while the *Bivens* action was being litigated.  (*Id.* at 27-28 (citing cases); *id*. at 28, n.7.)  Thus, while the court dismissed plaintiff's putative FTCA claim in the *Bivens* action, it did so without prejudice and allowed plaintiff until May 2, 2011 to initiate an FTCA action and plead allegations that could establish grounds for equitable tolling.  (*Id*. at 28, n.7)  The court reserved decision, however, on whether plaintiff's untimely FTCA action would actually be viable.  (*Id*.)  Plaintiff did not appeal the court's judgment dismissing his *Bivens* action.

### III. Defendant's Motion to Dismiss

On May 2, 2011, pursuant to the *Bivens* Dismissal Order dated March 25, 2011, plaintiff commenced the instant action under the FTCA.  (*See generally* Compl.)  As set forth earlier in greater detail, the complaint in this case essentially alleges that MDC employees negligently caused the July 25, 2007 attack by failing to comply with BOP regulations requiring segregation of SHU and general population inmates.  (*Id*. ¶¶ 17, 23-25, Ex. B at 2.)  Plaintiff also alleges that MDC employees permitted inmate Marrero to walk about the general population unescorted and unsecured, and admitted Marrero into Unit J-73.  (*Id*. ¶¶ 23, 25.)  Plaintiff seeks

$1,000,000 in compensatory damages for personal injuries sustained as the result of the alleged attack, as well as punitive damages in an unspecific amount.[5] (*Id*. ¶¶ 18-19.)

On August 10, 2012, defendant filed the instant motion to dismiss plaintiff's complaint pursuant to Rule 12(b)(1), arguing that the court lacks subject matter jurisdiction. (*See generally* Mem.) Specifically, defendant asserts that plaintiff failed to timely initiate an FTCA action within six months of exhausting his administrative review procedures, as required under the FTCA, because the BOP denied plaintiff's SF-95 in January 2010, but plaintiff did not initiate his FTCA action until May 2, 2011. (*Id*. at 5-7.) Defendant also contends that equitable tolling is not generally available in the Second Circuit for an FTCA action except under very narrow circumstances (*e.g*., when a plaintiff has no reason to know that the intended defendant is an employee covered by the FTCA), and those unique circumstances are not present in this case. (*Id.* at 7-11 (citing *Valdez v. United States*, 518 F.3d 173, 182-83 (2d Cir. 2008).)

Plaintiff opposed defendant's motion to dismiss the complaint on August 30, 2012. (*See generally* Opp.) While plaintiff concedes that he did not file "an entirely new lawsuit" after receiving the BOP's denial letter in January 2010, he seeks equitable tolling because plaintiff believed in good faith that his FTCA claim was being addressed in the then-pending *Bivens* action. (*See id*. at 2-4.) Plaintiff also expressed his lack of awareness that filing a "second" or "entirely new lawsuit" within six months of administrative exhaustion was necessary to timely raise his FTCA claim. (*Id*. at 2, 3-4.) Plaintiff thus asserts that the court should equitably toll the FTCA's six-month limitations period based on his lack of legal training and the BOP's denial letter's lack of explanation that plaintiff had to file an "entirely new lawsuit" in order to timely bring his FTCA claim. (*Id*. at 3-4.) Plaintiff also notes that the

---

[5] Because the FTCA does not permit recovery of punitive damages, *Catania v. Herbst*, No. 12-cv-1840, 2013 WL 65989, at *2 (E.D.N.Y. Jan. 4, 2013), plaintiff's request for punitive damages would be denied even if this court had jurisdiction over his claim.

8

procedure for initiating his FTCA claim – requiring him to "dismiss one case to file another one that would be essentially identical" – is "a bit illogical, which is likely why it never occurred to [plaintiff]." (*Id.*)

In its reply in support of its motion to dismiss, defendant further argues that equitable tolling cannot apply to this action because plaintiff cannot establish that his alleged failure to timely file his FTCA complaint in this court was due to any "misconduct, fraud, or misrepresentation on the part of the government, because there was none." (Reply at 2.) Defendant's reply brief also asserts, for the first time in this case, that plaintiff failed to surmount an "additional procedural hurdle" to his current FTCA action by not exhausting his administrative remedies under the PLRA. (*Id.* at 5-6). Because courts generally will not consider arguments raised for the first time in reply, *see, e.g., Lorber v. Winston*, No. 12-cv-3571, 2012 WL 5904522, at *13 (E.D.N.Y. Nov. 26, 2012); *Matera v. Native Eyewear, Inc.*, 355 F. Supp. 2d 680, 682–683 (E.D.N.Y. 2005); *Domino Media, Inc. v. Kranis*, 9 F. Supp. 2d 374, 387 (S.D.N.Y. 1998), the court need not address this aspect of defendant's reply brief.

In any event, defendant's lack of exhaustion argument under the PLRA does not require dismissal of plaintiff's FTCA complaint. Defendant's sole authority for the proposition that an inmate alleging an FTCA claim must exhaust his administrative remedies under the PLRA is *Valentine v. Lindsay*, No. 10-cv-868, 2011 WL 3648261, at *10 (E.D.N.Y. Aug. 17, 2011). (*See* Reply at 5-6.) The *Valentine* decision, however, represents a minority view in the Second Circuit on this issue. *See, e.g., Ford v. Spears*, No. 10-cv-1314, 2012 WL 4481739, at *8 (E.D.N.Y. Sept. 27, 2012) ("Exhaustion under the FTCA is separate and distinct from exhaustion under the PLRA."); *Owusu v. Fed. Bureau of Prisons*, No. 02-cv-0915, 2003 WL 68031, at *2, n.4 (S.D.N.Y. Jan. 7, 2003) ("[T]he FTCA process permits a prisoner to start with

the relevant BOP regional office without ever seeking internal redress [under the ARP].");

*Hylton v. Fed. Bureau of Prisons*, No. 00-cv-5747, 2002 WL 720605, at *2 (E.D.N.Y. Mar. 11, 2002) (same); *Alvarez v. United States*, No. 98-cv-3179, 2000 WL 679009, at *1 (S.D.N.Y. May 24, 2000) ("BOP regulations acknowledge that an alternative complaint procedure has been established for 'tort claims,' *i.e.*, FTCA claims. This [] procedure has only one level: The prisoner submits his claim to a BOP Regional Office.") (citation omitted). Thus, even if the court did address defendant's exhaustion argument, the court would follow the majority view in the Second Circuit and the relevant BOP regulations indicating that an incarcerated FTCA claimant need not exhaust his administrative remedies under the PLRA in order to commence an FTCA action. *See also* Administrative Remedy Program: Excluded Matters, BOP Rules & Regulations, 67 F.R. 50804-01, 2002 WL 1789480 (Aug. 6, 2002) ("This rule does not require the inmate to file under the [ARP] before filing under statutorily-mandated procedures for tort claims (see 28 CFR 543, subpart C), . . ."). Nonetheless, as set forth below, plaintiff's FTCA claim must be dismissed because he has not established that equitable tolling should apply to his untimely FTCA action.

## DISCUSSION

I. **Applicable Legal Standards**

    A. **Motion to Dismiss Pursuant to Rule 12(b)(1)**

Under Federal Rule of Civil Procedure Rule 12(b)(1), a claim may be dismissed for lack of subject matter jurisdiction. *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000) ("A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."). In reviewing a motion to dismiss under Rule 12(b)(1), the court must accept as true all material factual allegations in the complaint, but it is not required to draw all reasonable inferences in the

plaintiff's favor. *J.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004). Rather, a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists. *Makarova*, 201 F.3d at 113. In deciding a 12(b)(1) motion, the district court may rely on and refer to evidence outside the pleadings. *Id.*

Additionally, courts must construe *pro se* pleadings and briefs liberally, "reading such submissions to raise the strongest arguments they suggest." *Bertin v. United States,* 478 F.3d 489, 491 (2d Cir. 2007) (internal quotation marks omitted); *accord Erickson v. Pardus,* 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976))).

### B. The District Court's Jurisdiction Over an FTCA Action

Although the United States is generally entitled to sovereign immunity from suit, the FTCA grants subject matter jurisdiction to federal courts over claims against the United States seeking money damages for personal injury caused by the negligence of federal employees while acting within the scope of their employment. 28 U.S.C. § 1346(b)(1); *see Celestine v. Mount Vernon Neighborhood Health Ctr.,* 403 F.3d 76, 80 (2d Cir. 2005). The FTCA requires a claimant to exhaust administrative remedies prior to initiating an FTCA action in federal court, a "requirement [that] is jurisdictional and cannot be waived." *Celestine*, 403 F.3d at 82. Before initiating an FTCA action in federal district court, a claimant must file an administrative tort claim with the appropriate federal agency[6] within two years of the date of the claim's accrual. 28 U.S.C. §§ 2401(b), 2675(a); *Genao v. United States*, No. 08-cv-878, 2010 WL 3328017, at *1 (E.D.N.Y. Aug. 19, 2010). The administrative tort claim "must provide

---

[6] A claim is considered filed on the date an appropriate federal agency, that is, one "whose activities gave rise to the claim," receives from the claimant "an executed Standard Form 95 or other written notification of an incident." 28 C.F.R. § 14.2.

11

enough information to permit the agency to conduct an investigation and to estimate the claim's worth." *Romulus v. United States,* 160 F.3d 131, 132 (2d Cir. 1998). If the agency denies the claim within six months after it is filed, the claimant must then initiate an FTCA action in a district court (or seek reconsideration from the agency) within six months of the notice of denial of the claim. *Genao*, 2010 WL 3328017, at *1. If the claimant fails to timely comply with the FTCA's exhaustion requirement and timely commence an action in federal court, the claim is forever barred. *Id.;* 28 U.S.C. § 2401(b) ("A tort claim against the United States shall be forever barred . . . unless action is begun within six months after the date of mailing, . . . of notice of final denial of the claim by the agency . . . .").

Courts lack subject matter jurisdiction over a plaintiff's FTCA claim if the plaintiff fails to bring suit within the appropriate period. *See United States v. Kubrick*, 444 U.S. 111, 117–18 (1979) (the statute of limitations provided in § 2401(b) is strictly construed because the FTCA "waives the immunity of the United States"). Moreover, "the burden is on the plaintiff to plead and prove compliance with § 2401(b)." *Hollman v. Bartlett*, No. 08-cv-1417, 2011 WL 4382191, at *5 (E.D.N.Y. Aug. 26, 2011) (citing *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 210, 214 (2d Cir. 1987)), *adopted by,* 2011 WL 4382359 (E.D.N.Y. Sept. 20, 2011). "In the absence of such compliance, a district court has no subject matter jurisdiction over the plaintiff's claim*." In re Agent Orange*, 818 F.2d at 214 (citing *Wyler v. United States*, 725 F.2d 156, 159 (2d Cir. 1983)). Moreover, "because the FTCA creates a waiver of sovereign immunity, it is strictly construed, and all ambiguities are resolved in favor of the United States." *Glorioso v. F.B.I.*, No. 10-cv-3724, 2012 WL 5377801, at *4 (E.D.N.Y. June 21, 2012).

### C. Equitable Tolling of FTCA Claims

"Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). The Second Circuit has recognized that equitable tolling can apply to FTCA claims under certain limited circumstances. *See, e.g., Valdez*, 518 F.3d at 182-83 (equitable tolling could apply when plaintiff has no reason to know that intended defendant is an employee covered by FTCA); *see also Genao*, 2010 WL 3328017, at *4-5 (tolling FTCA limitations period where, due to *bona fide* dispute regarding proper representative of deceased plaintiff's estate during limitations period, "no plaintiff could have filed an action before the statute of limitations ran"). In FTCA matters, courts apply "the doctrine of equitable tolling in rare and exceptional circumstances, where [there exist] extraordinary circumstances [that] prevented a party from timely performing a required act and that party acted with reasonable diligence throughout the period he [sought] to toll." C*zernicki v. U.S. Dep't of Justice*, 137 F. App'x 409, 410 (2d Cir. 2005) (summary order) (internal quotation marks omitted) (affirming district judge's decision to deny equitable tolling for prisoner's failure to file an administrative claim under the FTCA). Generally, equitable tolling may be applied when the statute of limitations has passed but "the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or [] the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Czernicki*, 137 F. App'x at 410-11 (quoting *Irwin v. Dep't of Veterans Affairs*, 489 U.S. 89, 96 (1990)).

A putative FTCA claimant's ignorance of the initiation procedure or statute of limitations, however, has been found insufficient to warrant equitable tolling of the FTCA, even

13

where, as here, the claimant is incarcerated, lacks legal training, and asserts that the denial letter was confusing. *See, e.g., Czernicki*, 137 F. App'x at 410 (affirming district court's decision dismissing FTCA claim, even though inmate cited his inability to speak English and to understand the legal procedures, and his mental health deficiencies as reasons to toll the limitations period); *Hollman*, 2011 WL 4382191, at *6-7 (finding no basis for equitable tolling where inmate was incarcerated during applicable time period and was unaware "there were additional procedures with which he needed to comply," but had received standard denial letter); *Calabro v. D.E.A.*, No. 88-cv-5082, 1990 WL 16103, at *2 (S.D.N.Y. Feb. 14, 1990) (plaintiff's claim that he was not "cognizant of the legal extent of his claim until he consulted with a lawyer" did not warrant equitable tolling); *see also Bieregu v. Ashcroft*, 259 F. Supp. 2d 342, 355 (D.N.J. 2003) ("Neither lack of legal knowledge nor attorney error constitute extraordinary circumstances required for equitable tolling.") (internal quotation marks omitted).

**II.      Analysis**

Plaintiff's instant FTCA complaint alleges negligence by MDC employees with respect to their failure to supervise and prevent Marrero from attacking plaintiff during the July 2007 incident. Although the court is sympathetic to plaintiff's *pro se* status as to navigating the procedural requirements of the FTCA, the court is constrained by the applicable law to find that plaintiff's allegations have not established grounds for equitable tolling.

There is no dispute that plaintiff timely filed the SF-95 for his administrative tort claim with the BOP on July 17, 2009, within two years of the date of the claim's accrual on July 25, 2007. (*See* Mem. at 2; Compl. ¶¶ 15, 26.) The parties also agree that the BOP denied plaintiff's SF-95 claim on January 13, 2010 (within six months after it was filed), giving plaintiff until July 13, 2010 to initiate an FTCA action in district court. (*See* Mem. at 2; Opp. at 1.) It is

further undisputed that the denial letter stated that, if plaintiff was "dissatisfied with this decision, [plaintiff] may bring an action against the United States in an appropriate United States District Court within six (6) months of the date of this memorandum." (SF-95 Denial Ltr.; Mem. at 2.) Plaintiff did not, however, commence an FTCA action within six months of January 13, 2010, or by July 13, 2010. (Mem. at 5-7; Opp. at 1-2; *see also generally* Compl.) Based on the controlling law discussed above, plaintiff's instant FTCA action must be deemed untimely, and, consequently, the court has no jurisdiction over his claim. *See, e.g.*, *In re Agent Orange*, 818 F.2d at 214 ("In the absence of such compliance, a district court has no subject matter jurisdiction over the plaintiff's claim."); *Hollman*, 2011 WL 4382191, at *5 (same).

Additionally, although the court permitted plaintiff to replead his claim in the event plaintiff could establish grounds to warrant equitable tolling (*see Bivens* Dismissal Order at 27-28, n.7), plaintiff's submissions fall short of establishing the kind of "extraordinary circumstances" required in the Second Circuit to toll the statutory period to file an FTCA claim. C*zernicki,* 137 F. App'x at 410. For example, plaintiff does not allege that defendant has induced or tricked him into allowing the six-month limitations period to lapse, or that he filed a defective pleading during the statutory period between January 13, 2010 and July 13, 2010. *Id*. at 410-11; *Hollman*, 2011 WL 4382191, at *6. Nor has plaintiff alleged that he was unaware his intended defendants were employees covered by the FTCA, or that a *bona fide* legal disability prevented him from commencing his FTCA claim during the applicable period. *See Valdez* , 518 F.3d at 182-83; *cf. Genao*, 2010 WL 3328017, at *4. Rather, plaintiff has alleged that, despite receiving the BOP's denial letter instructing him to bring an action with the appropriate federal district court within six months, he was unaware that filing a "second" or "entirely new lawsuit" within six months of administrative exhaustion was necessary to timely raise his FTCA claim

15

due to his lack of legal training. (Opp. at 2, 3-4.) Plaintiff aptly observes that the FTCA initiation procedure could be viewed by a layperson as "a bit illogical" (*id.*), but, as other courts in this district have noted when refusing to apply equitable tolling to an untimely FTCA claim, "[m]any *pro se* inmates have trouble complying with the law, but they are still required to follow the administrative procedures." *Hollman*, 2011 WL 4382191, at *7. Therefore, although the court is sympathetic to plaintiff's circumstances, the controlling precedent in the Second Circuit mandates that the court find that plaintiff has not established grounds to apply equitable tolling to his untimely FTCA claim. Because the court may not exercise jurisdiction over an untimely FTCA claim, defendant's motion to dismiss is granted, and plaintiff's claims are dismissed with prejudice.

## CONCLUSION

For the reasons set forth above, defendant's motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction is granted, and plaintiff's complaint is dismissed with prejudice. The Clerk of Court is requested to enter judgment in favor of defendant, to serve the *pro se* plaintiff with a copy of the judgment and the appeals packet, and to close this case. Defendant is further respectfully requested to serve a copy of this Memorandum and Order on the *pro se* plaintiff and note service on this docket within three days of receiving this Memorandum and Order.

**SO ORDERED.**

**Dated:** March 29, 2013
Brooklyn, New York

_____/s/_____
Kiyo A. Matsumoto
United States District Judge
Eastern District of New York

16